UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE M. CONGDON,

                    Plaintiff,           Civil Action No. 19-13259

                                     Honorable Denise Page Hood

v.                                 Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 17)

      Plaintiff Bruce Congdon ("Congdon") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed thorough and well-written summary judgment motions (ECF Nos. 13, 17), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Congdon is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 17)** be **GRANTED**, Congdon's Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Congdon was 49 years old at the time of his amended alleged onset date of October 26, 2016, and at 5'7" tall weighed approximately 155 pounds during the relevant time period.  (Tr. 39-40, 146 150).  He has had little schooling, all of which was in special education classes.  (Tr. 41-42, 151).  He has very little work history, and he has not performed any work of substance since he completed a one-year jail sentence in 2000.  (Tr. 42-43, 132-36, 151).  In a disability report, Congdon indicated that he stopped working in 1999 when he was incarcerated and claims he was "unable to find employment after [his] release."  (Tr. 151).  He now alleges disability primarily as a result of back pain, knee pain, history of a gunshot wound in his neck with retained bullet, and borderline intellectual functioning with learning disabilities.  (Tr. 46, 150, 195-96).

After Congdon's application for SSI was denied at the initial level on February 8, 2017 (Tr. 71-74), he timely requested an administrative hearing, which was held on August 3, 2018, before ALJ Kari Deming (Tr. 36-60).  Congdon, who was represented by attorney Randall Phillips, testified at the hearing, as did vocational expert ("VE") Pauline Pegram.  (*Id.*).  On November 23, 2018, the ALJ issued a written decision finding that Congdon is not disabled under the Act.  (Tr. 15-26).  On September 23, 2019, the Appeals Council denied review.  (Tr. 1-5).  Congdon timely filed for judicial review of the final decision on November 5, 2019.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including

Congdon's medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.    The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Congdon is not disabled under the Act. At Step One, the ALJ found that Congdon has not engaged in substantial gainful activity since October 26, 2016 (the amended alleged onset date). (Tr. 17). At Step Two, the ALJ found that he has the severe impairments of cervical degenerative disc disease, dysfunction of the bilateral knees, history of gunshot wound with retained bullet, borderline personality disorder, and borderline intellectual functioning with learning disabilities in language. (*Id.*). At Step Three, the ALJ found that Congdon's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Congdon's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; can sit, stand, and walk up to the exertional limits, with the option to alternate between sitting and standing 1-2 times per hour; can understand and remember only simple instructions; and can engage

4

in simple duties, defined as those that can be learned within 30 days, and that require little or no judgment to perform.  (Tr. 19).

At Step Four, the ALJ found that Congdon has no past relevant work.  (Tr. 24).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Congdon is capable of performing the jobs of hand packager (42,000 jobs nationally), assembler – communication equipment (52,000 jobs), and assembler – plastic hospital products (15,000 jobs).  (Tr. 25).  As a result, the ALJ concluded that Congdon is not disabled under the Act.  (Tr. 26).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an

examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

In his motion for summary judgment, Congdon primarily argues that: (1) the ALJ's mental RFC finding is not supported by substantial evidence; (2) the ALJ erred in evaluating his subjective complaints; and (3) the ALJ erred in giving limited weight to the opinion of his treating physician, Robert Blasak, D.O.  (ECF No. 13, PageID.416-31). Each of these arguments is addressed below.

*1.    The ALJ's Mental RFC Finding is*
*Supported by Substantial Evidence*

As set forth above, from a mental perspective, the ALJ concluded that Congdon can

6

understand and remember only simple instructions and can engage in simple duties (defined as those that can be learned within 30 days, and that require little or no judgment to perform). (Tr. 19). In challenging the ALJ's conclusion in this regard, Congdon argues (a) that the ALJ "made conflicting findings" regarding the severity of his mental limitations; and (b) failed to incorporate the "credited limitations" of the consultative psychological examiner, Herman Daldin, Ph.D. (ECF No 13, PageID.418-22). Neither argument has merit.

### a.   The ALJ's Mental RFC Findings Were Not "Conflicting"

Congdon first contends that the ALJ "made conflicting [RFC] findings" because she stated in a footnote at Step Five of the sequential analysis that the jobs at issue could be learned through "simple demonstration," but she did not include this limitation in the RFC finding. (*Id.*, PageID.418-19). However, there is no conflict because the hypothetical "simple demonstration" limitation justifiably was not included in the RFC finding.

The only medical opinion about Congdon's mental RFC comes from Dr. Daldin, the consultative examiner, and he did not find that Congdon was limited to jobs learned only through simple demonstration. (Tr. 297-303). Instead, that limitation was raised by Congdon's attorney, who asked the VE about job availability if Congdon was "limited to a simple demonstration only rather than up to 30 days of instructions[.]" (Tr. 55). But, the ALJ's actual RFC finding is clear that Congdon can perform simple duties "*that can be learned within 30 days*, and that require little or no judgment to perform." (Tr. 19 (emphasis added)). Importantly, the ALJ queried the VE about a person with those particular limitations, and she identified the jobs which the ALJ ultimately found would be

available for Congdon to perform.  (Tr. 25, 52-53).  Thus, this aspect of the ALJ's decision is supported by substantial evidence in the record.

The ALJ was simply not convinced that Congdon could only do jobs that are learned through simple demonstration and, thus, did not include that limitation in the RFC.  The footnote included at Step Five, and upon which Congdon relies, does not change the analysis.  That footnote provides:

> While the jobs listed above [hand packager, assembler – communication equipment, and assembler – plastic hospital products] are consistent with the Dictionary of Occupational Titles, the vocational expert testified that, based on her forty years of experience as a vocational rehabilitation consultant, these jobs lend themselves to work that can be learned through only simple demonstration and would not preclude them based on their listing at [Specific Vocational Preparation ("SVP")] 2 rather than SVP 1.

(Tr. 25, n. 1).  In adding this footnote, the Court agrees with the Commissioner that the ALJ was simply providing additional protection for her decision against possible remand, not a new or additional RFC limitation.[1]  (ECF No. 17, PageID.447 (citing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("[T]he ALJ may pose a question involving a hypothetical individual with several limitations – and then later decide that those limitations differed from the claimant's limitations.  That does not mean that the

---

[1] Congdon also takes issue with the VE's testimony that an individual who is limited to "short demonstrations" could perform SVP level 2 jobs, asserting that such a conclusion contravenes Social Security Ruling ("SSR") 00-4p, which provides that VE evidence cannot conflict with the regulatory definitions for the skill levels of work.  (ECF No. 13, PageID.419-20).  This argument too is without merit, as the VE's testimony that the SVP 2 jobs at issue require only a simple demonstration does not conflict with the *regulatory* definition of unskilled work, which states that unskilled work "can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  In other words, the regulations do not define unskilled work as work that must be learned by *more* than simple demonstration.

vocational expert's answer about the *hypothetical individual* binds the ALJ.")) (emphasis in original; internal citation omitted).  Thus, where the ALJ did not include the "simple demonstration" limitation in the RFC, there were no "conflicting" RFC findings.

> b.    The ALJ's RFC Finding Accounts for Dr. Daldin's Opinion

As Congdon points out, Dr. Daldin evaluated him on March 9, 2018.  (ECF No. 13, PageID.420 (citing Tr. 297-303)).  The ALJ summarized this evaluation as follows:

> Dr. Daldin observed the claimant was evasive and defensive throughout his examination and that the claimant was negative and slightly depressed.  He also noted that the claimant presented as "quite simple" but showed no signs of psychosis, thought disorder, paranoia, delusions, hallucinations, or urges to harm himself or others.  Dr. Daldin noted that the claimant had had significant problems with antisocial acting out as well as pathological denial and avoidance.

(Tr. 23 (internal citations omitted)).  The ALJ also noted that intelligence testing performed by Dr. Daldin showed that Congdon had a full-scale IQ of 77, with a limited ability to understand and use language and problems with short-term memory functioning.  (*Id.*). The ALJ then stated: "Great weight is given to Dr. Daldin's determination that [Congdon's] poor verbal skills and understanding limit [him] to performing rote, simple jobs because it is proportional to the objective findings."  (*Id.*).

Congdon now argues that "[d]espite according great weight to Dr. Daldin's opinion, the ALJ committed reversible error in omitting the credited limitation to 'rote simple jobs' in the RFC assessment without explanation."  (ECF No. 13, PageID.421).  But, the Court agrees with the Commissioner that this argument is based on the inaccurate premise that the ALJ must repeat the doctor's opinion verbatim in the RFC finding.  (ECF No. 17, PageID.448-49 (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir.

9

2015)) (the ALJ is not required to adopt an opinion verbatim, even where she gives it great weight); *see also Callahan v. Comm'r of Soc. Sec.*, No. 17-14069, 2019 WL 2218825, at *8 (E.D. Mich. Feb. 4, 2019) (same).  Dr. Daldin found that Congdon "certainly can do rote, simple jobs," and the ALJ gave great weight to this finding in the opinion and in the RFC, limiting Congdon to work involving "simple instructions" and "simple duties, defined as those that can be learned within 30 days, and that require little or no judgment to perform." (Tr. 19).  As Congdon concedes, "[t]he ALJ was free to use whatever wording she chose so long as it fully captured the opinion being credited."   (ECF No. 19, PageID.470).  Contrary to Congdon's argument, however, the Court finds that the RFC verbiage is substantively similar to Dr. Daldin's verbiage to "fully capture[]" his opinion; thus, Congdon has identified no error warranting remand.[2]

### 2. *Substantial Evidence Supports the ALJ's Evaluation of Congdon's Subjective Complaints*

Congdon next argues that the ALJ erred in concluding that his subjective complaints "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record …." (Tr. 20).  The Sixth Circuit has held that ALJs are in the best position to evaluate a claimant's

---

[2] Adding a little more context confirms the Court's conclusion.  As the Commissioner correctly points out, "a careful reading of both the RFC and Dr. Daldin's opinion shows that they are much more similar than [Congdon] lets on."  (ECF No. 17, PageID.449).  Specifically, Dr. Daldin's opinion that Congdon "certainly can do rote, simple work" comes right after his findings that Congdon has no limitations in his ability to "understand and remember simple instructions," "carry out simple instructions," and "make judgments on simple work-related decisions."  (Tr. 301). Thus, it is clear that the ALJ's RFC finding substantively accounts for Dr. Daldin's opinion, even if it is not a word-for-word translation of that opinion.

subjective complaints because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable and, should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). Moreover, an ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

Here, the ALJ considered Congdon's subjective complaints but found that they were "not entirely consistent" with the record evidence based on several factors, such as:

- Congdon's daily activities. Specifically, the ALJ noted that while Congdon alleges that his foot, neck, and back pain prevent him from doing yard work, he indicated not only that he "regularly performs household chores but that he does most of the chores around the home." (Tr. 20, 159, 298). The ALJ also noted that although Congdon stated he could not walk for long periods of time, he "regularly goes outside and goes shopping." (Tr. 20, 160). And, the ALJ noted that while Congdon indicated he has difficulty remembering and concentrating, he "also reported that he prepares his own meals, frequently watches television, plays cards and games well, reads 'a little bit,' and does not need reminders to groom himself, take medication, or go places[.]" (Tr. 20-21, 158-62).[3]

---

[3] Congdon challenges the ALJ's reliance on his daily activities in discounting his subjective complaints. (ECF No. 13, PageID.423-24). For example, he takes issue with the ALJ's observation that he does most of the chores at home, claiming this was primarily based on his function report with simple, one-word answers. (*Id.*, PageID.423). But, in addition to the function report, the consultative examiner specifically indicated that Congdon "does *most* chores around the home." (Tr. 298 (emphasis added)). Similarly, with respect to the ALJ's comment about Congdon's alleged memory and concentration problems, the ALJ was allowed to consider that he frequently watches television, plays cards and games, and prepares his own meals. (Tr. 20-21). And, while Congdon complains that he "never stated that he frequently watched television, as the

- Conservative nature of treatment.  The ALJ also considered the conservative nature of Congdon's treatment, as well as its effectiveness, noting that "despite his complaints of pain, [Congdon] reported that his neck and knee pain were successfully treated conservatively through medications with no side effects." (Tr. 20, 262, 266, 269, 272, 275, 279, 283, 352, 355).  The ALJ further noted that Congdon reported good pain relief with no significant side effects following surgery to remove hardware from his left knee.  (Tr. 20, 268).[4]

- Generally benign physical and mental status findings.  The ALJ noted throughout her decision that Congdon's physical examination findings were generally benign, including normal gait, strength, sensation, and – with respect to most joints – normal range of motion.  (Tr. 21-22, 222-23, 241-42, 256, 260, 264, 267, 270, 273, 277, 281, 354).  Similarly, the ALJ noted that Congdon's mental status examination findings included normal mood, affect, judgment, insight, and memory.  (Tr. 22, 223, 237, 242).

- Dr. Kuiper's opinion.  The ALJ gave significant weight to the opinion of state agency physician Donald Kuiper, M.D., who – like the ALJ – found that Congdon is capable of physically performing a reduced range of light work. (Tr. 23, 66-67).

- Dr. Daldin's opinion.  The ALJ gave great weight to the opinion of consultative psychological examiner Dr. Daldin, who – as explained above – found that Congdon can perform simple work.  (Tr. 23, 297-303).

All of these considerations were valid and appropriate.  *See, e.g.,* SSR 16-3p, 2016 WL

---

ALJ claimed" (ECF No. 13, PageID.426), he did tell Dr. Daldin that he "watches TV 'a lot'" (Tr. 298).  Overall, the ALJ properly considered Congdon's inconsistently-reported daily activities as one of several factors weighing against his subjective allegations of disability.  *See Rodriguez v. Comm'r of Soc. Sec.*, No. 16-11523, 2017 WL 1362701, at *7 (E.D. Mich. Feb. 21, 2017) (ALJ "appropriately considered numerous substantive inconsistencies between [Plaintiff's] hearing testimony and his previous reports" in evaluating his subjective complaints).

[4] Congdon also challenges the ALJ's conclusion that his pain was successfully treated conservatively, citing examples in his medical records that – according to him – show that he continued to experience knee and neck pain and had some abnormal physical examination findings.  (ECF No. 13, PageID.424-26).  As the Commissioner points out, however, this does not change the fact that Congdon generally reported excellent pain relief (between 75-90%) with his medications, which is a conservative form of treatment.  (ECF No. 17, PageID.456 (citing Tr. 262, 266, 269, 272, 275, 283, 352)).  At most, Congdon invites the Court to reweigh the evidence, which is impermissible.  *See, e.g., Paquette v. Saul*, No. 19-12006, 2020 WL 6391311, at *5 (E.D. Mich. July 29, 2020) (citing *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014)).

1119029, at *4, 6-7 (March 16, 2016) (as part of the subjective symptom evaluation, ALJ may consider objective medical evidence, medical opinions, daily activities, type of treatment and its effectiveness).  In short, while the ALJ properly recognized that Congdon suffers from pain and other subjective complaints, substantial evidence supports the ALJ's conclusion that "the intensity, persistence and limiting effects" of Congdon's complaints were "not entirely consistent" with the record evidence.  (Tr. 20).  Accordingly, that conclusion by the ALJ should not be disturbed.

### 3.  Substantial Evidence Supports the ALJ's Evaluation of Dr. Blasak's Opinion

In November 2017, Congdon's treating physician, Robert Blasak, D.O., completed a Medical Source Statement and a Physical Capacities Evaluation, both of which set forth his opinion of Congdon's condition "as of 10/1/15."  (Tr. 287-95).  Dr. Blasak indicated that Congdon's diagnoses included cervical disc disease (with a retained bullet in his cervical spine) and low back pain, with antalgic gait and decreased range of motion of the cervical and lumbar spines.  (Tr. 287).  Among other things, Dr. Blasak opined that Congdon could lift 10 pounds only occasionally; could sit less than three hours in a workday and stand/walk for less than two hours; that he needed a 20-minute rest period every hour; that he would need to "lie down or rest for substantial periods"; and that he would be absent from work one day per week.  (Tr. 293-95).

In his motion, Congdon argues that the ALJ violated the treating physician rule when she gave only "limited weight" to Dr. Blasak's opinion.  (ECF No. 13, PageID.427-31).  The treating physician rule "mandate[s] that the ALJ 'will' give a treating source's

opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, the ALJ considered Dr. Blasak's opinion, saying:

> While Dr. Basak [sic] has an established treatment record with the claimant, the limitations he alleges are not proportional to his objective findings. Specifically, while Dr. Basak [sic] has noted the claimant has tenderness and an occasionally limited range of motion of the knees and cervical spine, he consistently notes that the claimant has a normal gait and station, normal stability, normal reflexes and sensation, full muscle strength throughout, and a normal mood and affect (e.g. [Tr. 221-24, 237, 240-42]). Additionally, despite noting greater physical impairments in the claimant, Dr. Sripada consistently found that the claimant had a normal gait and successfully had this pain treated conservatively through medication (e.g. [Tr. 329, 331, 333-37, 340-42, 344, 346, 348-49, 354, 357, 361]). Thus, the results of both Dr. Basak [sic] and Dr. Sripada do not support the limitations suggested by Dr. Basak [sic].

(Tr. 23). As set forth below, the reasons articulated by the ALJ for discounting Dr. Blasak's

14

opinions find support in the record.

First, while the only clinical findings Dr. Blasak identified to support the disabling limitations he imposed were antalgic gait and limited range of motion of the cervical and lumbar spine (Tr. 287), Dr. Blasak's treatment notes consistently indicate that Congdon had normal gait (Tr. 223, 237, 242), and Congdon did not allege any problems walking when he met with Siva Sripada, D.O., his pain management physician (Tr. 263, 266, 269, 272, 277, 281, 354 ("Denies Gait abnormality")).[5]  Also, unlike Dr. Blasak's opinion, his treatment notes say nothing about limited range of motion of the lumbar spine.  (*E.g.*, Tr. 223, 237, 242).  The ALJ properly relied on this evidence to discount Dr. Blasak's opinion. *See Cangialosi v. Comm'r of Soc. Sec.*, No. 13-10210, 2014 WL 1260711, at *3-4 (ALJ permissibly discounted treating source opinion based on mostly normal physical examination findings, such as normal gait, normal neurological findings, and range of motion testing); *Hannah v. Comm'r of Soc. Sec.,* No. 16-11589, 2017 WL 4946578, at *10 (E.D. Mich. Aug. 15, 2017) (ALJ properly discounted treating physician opinions where they "were not supported by the providers' own treatment notes and were otherwise inconsistent with other substantial evidence in the record").

---

[5] Congdon asserts that the fact that he had a normal gait is "not determinative" because "[p]ain alone can limit an individual's ability to walk …."  (ECF No. 13, PageID.429).  While Congdon's assertion is undoubtedly true, it does not change the fact that, during the observations in question, whatever pain Congdon was experiencing was not severe enough to limit his ability to walk.  The single finding of "mildly antalgic gait" cited by Congdon (Tr. 310) does not negate the remainder of the evidence discussed above.  *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.")).

Moreover, with respect to Congdon's argument that the ALJ did not mention some of the abnormal physical examination findings from his 2018 Pain Center records, the law did not require her to do that.  Indeed, an ALJ does not have to discuss all of the evidence submitted, and her failure to cite specific evidence does not indicate that she did not consider it.  *See Kornecky,* 167 F. App'x at 508 ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  Merely pointing to a particular piece of evidence that was not specifically mentioned by the ALJ without showing how further discussion of that evidence would advance his claim is insufficient to warrant remand.  Moreover, Congdon has failed to show how, specifically, the abnormal findings he cites – such as muscle tenderness and positive lumbar facet loading – would support the extreme restrictions Dr. Blasak assessed.  (*See* ECF No. 13, PageID.431).  Finally, even if those findings did provide some support for Dr. Blasak's opinion, it is the ALJ's job to resolve conflicts in the evidence – which she did here – and her decision must stand so long as it is supported by substantial evidence.  *See, e.g., Biestek*, 880 F.3d at 785; *Cutlip*, 25 F.3d at 286.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, that decision should be affirmed.[6]

---

[6] Congdon argues in passing that remand is required because "the ALJ asked [the VE] to assume a person [with] the claimant's … education without identifying any education level or including any intellectual deficits, despite finding Mr. Congdon's severe impairments included borderline intellectual functioning with learning disabilities in language."  (ECF No. 13, PageID.432)

16

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 17)** be **GRANTED**, Congdon's Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: January 7, 2021                    s/David R. Grand
Ann Arbor, Michigan                     DAVID R. GRAND
                                        United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

---

(internal quotations omitted). But, this argument is without merit, as the VE was present for Congdon's hearing testimony – including testimony about his educational background (Tr. 41-42) – and, thus, was aware of it. Moreover, the ALJ did include mental limitations based on Congdon's intellectual deficits in the RFC and VE hypothetical, and those limitations came from Dr. Daldin, the only doctor who conducted an intellectual assessment and issued an opinion about Congdon's RFC. Thus, the Court finds no error here.

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 7, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager